
# UNITED STATES DISTRICT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** ) | ) | |
| v. | ) | Case No. 21-cr-398 (BAH)-1 |
| **JAMES BURTON MCGREW,** | ) ) ) | |
| Defendant. | ) | |

**Supplement to Defendant's Reply in Support of Motion to Revoke Detention Order"**

### I.  The Government Has Misled The Court With Regard to the Nature of the Video Evidence In This Matter.

More than 85 years ago the Supreme Court memorialized in its jurisprudence the following iconic passage regarding the Department of Justice's obligations towards persons accused of crimes:

> *The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially … and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law…. He may prosecute with earnestness and vigor— indeed, he should do so. But,* ***while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods… as it is to use every legitimate means….***

*Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)(emphasis added).

When the issue before a court is the pretrial liberty interests of the defendant in a criminal case – not yet convicted and entitled to the benefit of the presumption of innocence – the obligation of the government to be scrupulously honest is paramount.  In a pretrial detention

circumstance, where the government is allowed to proceed by way of proffer, a lack of candor – or out-right deception – to the Court should be shocking and inexcusable.

Fortunately for Mr. McGrew, it is the practice of this Court to watch video evidence referenced by the government in detention hearings, and not rely alone on a proffer alone as to the contents. If that were not the case, Mr. McGrew would suffer here from misguided notions of justice and fair play that seem to have been put in play by the government.

Any citizen facing the full wrath and power of the federal government is entitled to expect, at a minimum, that the government won't exaggerate or embellish evidence in service of its preference to keep the citizen detained prior to a guilt determination by a jury.

In Mr. McGrew's Reply Memorandum, the defense clearly showed the misrepresentation made in the government's Opposition brief regarding the "ladder incident" -- raised by the government for the first time in its Opposition.

On page 10 the government clearly and unambiguously claimed that Mr. McGrew assisted other protesters in moving a large ladder over the top of the crowd towards the archway tunnel to the Lower West Terrace entrance to the Capitol. The government made reference to CCTV video, and inserted a still image of Mr. McGrew and the ladder directly under the paragraph making the claim.

The Reply conclusively established that the video evidence involving the ladder incident clearly showed that as the ladder was passed forward into the tunnel and then backwards out of the tunnel away from the building, and at no time did Mr. McGrew touch the ladder or otherwise assist in the effort.

This created a question for the government with no "good" answer – the government either watched the video and purposely mischaracterized it, or the government misrepresented in the Opposition that it watched the video when it had not done so.

The Opposition papers were written in such a fashion that the reader is certainly led to conclude that the government watched the video:

*In the CCTV footage*, the defendant did not look for his mother; he was moving forward. *In fact, as depicted below*, **prior to reaching the front of the tunnel**, the defendant assisted other rioters in moving a ladder forward towards the entrance of the tunnel.

Given the language of the Opposition, how could it be that the writer claimed Mr. McGrew "assisted" in "moving the ladder forward" without watching the video? A still image doesn't reflect movement over time.

The Reply explained that the moment captured in the still image was not prior to the ladder reaching the tunnel, it was after the ladder had reached the tunnel and was being withdrawn. The Reply also explained that the video shows that in the moment captured in the image the ladder was several feet to Mr. McGrew's left – the two-dimensional photograph is an optical illusion – and he never touched for the simple reason that it was out of his reach.

After being challenged on this new claim in the Reply Memorandum, and then confronted by the Court during the hearing with this incongruity, rather than admit that she had not watched the video prior to writing the Opposition, the prosecutor attempted to "withdraw" the allegation about Mr. McGrew and the ladder based on the claim that she could not say for certain if the hand on the ladder was Mr. McGrew's hand.

But when questioned further, she claimed that the still image in the Opposition was not taken from a video, and that she has not reviewed any video from the vantage point that still image reflected. Noteworthy is the fact that she twice evaded direct questions from the Court

about where that still image came from if not from a video in the possession of the Government. That question remains unanswered.

She then further disassembled by claiming – almost comically – that the second sentence in the paragraph on Page 10 was not meant as a reference to anything shown on CCTV video as claimed in the first sentence. She stated there was no intent to suggest in the Opposition that CCTV footage had captured the "ladder incident," and it only applied to Mr. McGrew's claim he was looking for his mother at the time.

This is revealing as to how hard the government is working to keep Mr. McGrew in custody pending trial. The reference to the ladder is for the purpose of involving him in the violent conduct of others in which he was not involved. It was even willing to go to the extreme of misrepresenting in writing what video evidence shows, and then denying having done so when caught out on that lie.

If this was the only incident of this nature, the dubious explanation might escape further scrutiny. But it is not.

## II.     The Government Has Mischaracterized Video Evidence of The Alleged Offense Conduct Involving Counts Two, <u>Three and Four</u>.

The government has submitted multiple videos of Mr. McGrew at various points in time on January 6. The government contends these videos are evidence of Mr. McGrew's "dangerousness" which is so severe that if released, there are no combination of conditions that would protect the community from the threat that he would represent.

What is first noteworthy about most/all the videos of Mr. McGrew is that while he remained in or around the Capitol far too long on January 6, the episodes of conduct which the government relies upon happen almost too fast to see them by watching the videos at normal speed. This is not a situation where Mr. McGrew is involved in extended physical confrontations

and violence with law enforcement officers. Each incident involves a response or reaction by Mr. McGrew to some action taken by law enforcement. When his "reaction" is over, there is no further interaction by him with any law enforcement officers that might suggest he came to January 6 events with any animosity towards law enforcement or an intent to engage in violence while there.

This reality presents a challenge when it comes to watching the videos. Because the incidents take place so quickly it is difficult to see clearly what is happening. Beyond the specific instance of Mr. McGrew's conduct, it is difficult to discern why the events happened.

Slowing the video down to second-by-second stop motion viewing, where the positions of Mr. McGrew, the Officers involved, and other individuals present, shows how they all moved in relationship to each other as the events unfold. This is indispensable in understanding what happens over a very short time frame that can make it difficult to understand when the video is watched at normal speed.

There are three primary episodes: 1) inside the Capitol Rotunda involving an unknown officer at approximately 3:05 pm; inside the Capitol Rotunda involving the police "baton" at approximately 3:08 pm; and outside the Capitol at the Lower West Terrace archway entrance at approximately 4:14 pm.

While the Court has expressed an intention to watch all the videos, there are three videos that most clearly show what transpired during each of these three incidents.

1)     First Incident: Mr. McGrew and Unknown Officer – Charged as Count Three, Assault.

In the Opposition brief, the government claims the video evidence shows: "… at approximately 3:05 pm, the defendant first pushed an unknown officer and then struck an MPD officer standing before him."

This description is incomplete and inaccurate. Not surprisingly – as it turns out – the government has NOT submitted the most clear video of this incident among the 14 videos it has submitted – likely because the clearest video presents the best view of this episode and is therefore helpful to Mr. McGrew.

The defense will make every effort to deliver this video to the Court on November 1. The video identifier provided by the government is X6039BCTB, another Body-Worn-Camera video of an unknown Officer.

15:05:30 – Officers present inside the Rotunda begin to use their batons to push against the protesters who are refusing to follow their commands to exit the Rotunda.

15:05:32 – Mr. McGrew appears momentarily in the upper left corner of screen. The BWC Officer begins to more aggressively employ his baton against people in the Rotunda – not including Mr. McGrew. He is trying to force their compliance with the commands that they exit the Rotunda.

15:05:54 – The activity involving Mr. McGrew comes into the view of this BWC to the left of the center of the screen – 10-15 feet from where the BWC Officer is standing.

A second Officer – Officer #2 – strikes a protester in the back of the head with a closed fist as the protester's back is turned facing away from the officer, and towards the exit he is being directed to. It is not clear whether Officer #2 has anything in his hand or not. Most officers do have batons in their hands as they are pushing the protesters towards the exit.

Officer #2's blow to the back of the head of the protester facing away was forceful enough that the protester stumbles forward and nearly falls down.

As the protester is stumbling, Officer #2 attempts to strike a second blow in similar fashion. But the protester has stumbled out of the Officer #2's reach, Officer #2 misses with his attempt, and this causes Officer #2 to lose his balance from his own effort.

15:05:55 -- Mr. McGrew is standing on Officer #2's right side separated by 3-5 feet. Mr. McGrew reacts to Officer #2's second attempted blow by reaching out with his left hand -- Mr. McGrew is holding his cell phone in his right hand. This video does not show whether there was an impact by Mr. McGrew as the camera becomes obscured by another Officer at that moment.

The next image that is visible is a still off-balance Officer #2 moving to his left, away from Mr. McGrew. Mr. McGrew immediately retreats several feet away from the group of Officers standing with Officer #2. None of the other Officers in the group made any movement in Mr. McGrew's direction in response to what happened in full view in front of them.

6

15:06:30 – Mr. McGrew comes forward again to the line of Officers and can be seen taking video with his camera without further incident.  He fails to comply with their orders that he exit the Rotunda, but the Officers present eventually evict all protesters from the Rotunda area, including Mr. McGrew.

    2)       <u>Second Incident</u>: Officer's Collapsible "Asp" Baton – Charged in Count Two, "Civil Disorder".

    Body-Worn-Camera Video of Officer Green, marked as Video No. 4 by the government.

This video is another BWC inside the Capitol Rotunda.  Before receiving this video – it was not produced in discovery -- the defense was told the BWC belongs to an "Officer Green." The name of the "Officer Baton" is unknown.

The government's Opposition describes this incident as follows:

> At approximately 3:07 pm, when an officer used his baton to attempt to push the defendant and other rioters closer to the exit, the defendant struck the officer and lunged for the officer's baton. The striking of the law enforcement, the attempt to grab the baton, and the defendant's general obstructive behavior as law enforcement officers attempted to clear the room are the basis of the 18 U.S.C. § 231(a)(3) charge.[1]

15:03:45 – Mr. McGrew is recorded by Officer Green taking video of Officers at the entry way to the Rotunda.  Mr. McGrew is not combative or aggressive towards the officers in any fashion.

15:04:00 – Mr. McGrew is captured by Officer Green's BWC talking with other Officers.  He is not combative or belligerent in his manner.

15:05:45 – The Officers become increasingly aggressive in trying to move the crowd towards an exit.  The Rotunda is not full. The Officers appear to outnumber the protesters, and are at no risk of losing control of the Rotunda to the crowd.

---

[1] It is possible that the incident described under the caption is <u>NOT</u> the incident the government refers to in its Opposition and has charged in Count Two of the Indictment. The Opposition says the charged incident happens at 3:07 p.m.  The incident described herein as recorded on Officer Green's body-worn-camera, during which the Mr. McGrew gains possession of an officer's baton, begins at 3:08.30.  Nevertheless, the incident described herein demonstrates the lack of aggressiveness and agitation of Mr. McGrew inside the Rotunda, and is highly relevant to whether his actions on January 6 show by "clear and convincing evidence" that he is a "danger to the community."

15:07:32 – Officer Greene has gone around the end of the police line and is close to Mr. McGrew, standing just to his right. Mr. McGrew is talking to line of Officers in front of him in a conversational tone. There is no combativeness demonstrated by the Officers towards the crowd or crowd towards the Officers, including Mr. McGrew.

15:08:20 – Another Officer has one hand holding the shirt Mr. McGrew is wearing under this jacket. Mr. McGrew's hands are up. Mr. McGrew says "Don't grab me like that" in a conversational voice – not threatening.

> *The government mis-describes this episode at page 7-8 in the Opposition. The government claims this episode happened <u>after</u> the incident involving the baton, but Officer Green's BWC shows it happened just prior to the incident involving the baton. The Opposition states that it is the Officer who says to Mr. McGrew to "Quit hurting me like that." That is inaccurate. The Officer is grabbing Mr. McGrew's shirt, Mr. McGrew has both hands in the air, and it is Mr. McGrew who states "Don't grab me like that." Mr. McGrew can also be heard asking an Officer to "Quit hitting me."*

15:08:25 – At this point the video image is not discernible because there is now a physical scuffle between multiple protesters and the Officers. How the scuffle begins cannot be seen in this video.

15:08:30 – The video becomes clear again and you can see Mr. McGrew, palm down, with his left hand he has a grip on the middle of a collapsible steel "Asp" baton. Officer Green is next to Officer Baton. Multiple officers, including Officer Green, are using their batons to push into the crowd to force them towards the exit.

Mr. McGrew is still holding his phone in his right hand, and is grasping the baton with his non-dominant left hand in reaction to being hit in the ribs and torso – it was a defensive reaction on his part.

Officer Baton has his hands on both ends of the Asp – a bare right hand on the handle, and gloved left hand on the tip end.

15:08:34: Mr. McGrew is still holding the Asp with left hand but he is now moving and bending forward at the waist. Officer Baton is pulling Mr. McGrew in an effort to pull the Asp out of his hand.

Stop action review shows that that Mr. McGrew's hand is still palm down, but is beginning to twist in the direction of his thumb so that is thumb is pointing down towards the floor.

In another stop action moment Officer Baton's two hands can be seen turning as if they are on a steering wheel. Officer Baton is attempting to break Mr. McGrew's hand off the Asp by twisting his arm.

15:08:36 – Mr. McGrew's hand and arm are suddenly jerked the opposite direction such that his palm is now pointing up. He is still gripping the middle of the baton with his non-dominant left

8

hand while Officer Baton has his hands on both ends of the baton. Mr. McGrew is still bent over forward.

15:08:37 – Mr. McGrew suddenly stands upright and takes a couple of steps backwards away from the line of Officers to steady himself. He has the Asp in his left hand, gripped in the middle.

15:08:39 – With no hesitation, Mr. McGrew stepped forward, held the Asp out in front of him while gripping it by the tip end and offered it to Officer Green. Officer Green said "Thank you" as he took the Asp.

Mr. McGrew then says "Tell him to quit hitting people. Give it to him, he's right behind you" referring to Officer Baton.

Officer Green responds, "I'll give it to him later, he lost it" and tosses it on the ground behind him.

Mr. McGrew is not agitated or aggressive towards any Officer either with the Asp or without it. Mr. McGrew didn't take the Asp from Officer Baton. Mr. McGrew did not have any leverage with which to control the Asp using his left hand and gripping in the middle. Officer Baton, with his hands on both ends, had the leverage to twist the Asp out of Mr. McGrew's grasp – but he lost grip on it, leaving Mr. McGrew as the only person holding onto it.

Not even for a moment did Mr. McGrew show any indication of wanting to use the Asp himself as a weapon against any Officer. As quickly as he realized he had it, he stepped forward and handed it to Officer Green, asking him to give it back to Officer Baton.

> 3) <u>Third Incident</u>: Pole Inside the Archway Tunnel – Charged in Courts Four through Seven.

The clearest video of this incident is another BWC of an unknown Officer who is inside the tunnel, in a position on the right side as he looked out, and elevate above the others inside the tunnel, protesters and officers alike. From this position, the Tunnel Officer is able to liberally, and for a long period of time, use chemical irritants against the protesters inside the tunnel.

9

The government's opposition describes the alleged assaultive conduct of Mr. McGrew on page 11 as follows:

At approximately 4:13 pm, as the defendant was standing near the mouth of the tunnel, another rioter handed the defendant a pole, almost the same height as the defendant, which the defendant accepted with his left hand. The defendant then positioned the pole over his head and launched the pole into the tunnel, notably throwing the pole end with a metal hook towards the law enforcement officers. The pole appeared to hit another rioter and/or the shield/visor of an officer, thus tempering what likely would have been a serious injury to an officer within the tunnel.

Not reflected in the Opposition is the fact that the pole incident follows very close in time to the aggressive use of "bear mace" by the Tunnel Officer, as noted in more detail below.

4:07:32 – The ladder first comes into view in the video.  It is carried about one-half its length inside the archway before one of the protesters stops it with his hand and begins to push it back out as a signal for others to remove the ladder from the tunnel.

For several minutes before and after the time the ladder appears Tunnel Officer is continually using small containers of pepper spray to shoot a thin stream of irritant at the protesters who are at the front and inside the archway.  Other Officers in the tunnel continually hand him new containers as the ones he is using become empty.

A few dozen Officers inside the tunnel are blocking any further progress by mob trying to get up the steps and into the Lower West Terrace entrance.  The protesters inside the tunnel are blocked from going forward by the Officers, and are unable to go backwards because of the massive crowd behind them.  The protesters in the front employ a variety of tactics to shield themselves from the chemical irritant being sprayed by Tunnel Officer, but most unsuccessfully.

After the ladder is removed, Tunnel Officer obtains a different chemical irritant – likely one taken away from a protester.  This is a much larger cannister that sprays an orange mist under significant pressure and a much farther distance that the small containers he had been using.  This item appears to be a product commonly referred to as "bear mace".

Up to the point the situation in the tunnel was largely a "stalemate" – the neither the Officers nor the protesters were backing up to resolve the situation.

After Tunnel Officer began using the "bear mace," the situation at the front of the police line became a melee. The protesters caught inside the tunnel reacted to the "bear mace" with what is best characterized as a "fight or flight response." Some began to climb over the top of the people behind them to get out of the tunnel. A few begin taking violent action against the Officers in front of them to escape the "bear mace."

Within approximately two minutes after the "bear mace" was employed, an empty space developed between the front of the police line and the entrance to the tunnel archway. Any protester who stepped into the opening was hit with a blast of "bear mace" by Tunnel Officer.

While this was taking place inside the tunnel, Mr. McGrew was climbing over and through the crowd on the steps outside the tunnel until he reached the wall on the right side of the tunnel archway. Mr. McGrew was one of the unfortunate individuals to step into the opening and receive a dose of "bear mace" from Tunnel Officer.

After that, he attempted to look inside the tunnel from around the corner without exposing himself in the opening. He was perched on the top of a small railing that elevated him off the ground so he could see over one or more persons in front of him.

4:14:01 – After only a short period after being hit by bear mace himself, while hanging on to the side of the building, Mr. McGrew took the white railing from someone else holding it.

4:14:13 – Using his left hand, Mr. McGrew tossed the handrailing across the gap between the entrance to the archway tunnel and the front line of the officers. It did travel the full distance of approximately 10 feet, hits some object, and is grabbed by one of the nearby officers.

The Motion filed on behalf of Mr. McGrew describes this incident from the vantage point reflected by video taken by someone in the crowd outside the tunnel and behind Mr. McGrew.

11

The motion states that the handrailing appears to travel on 2-3 feet. But the BWC of Tunnel Officer shows from a vantage point inside the tunnel that the handrailing did cross the entire empty span between the tunnel entrance and the line of Officers inside.

But the facts remain that Mr. McGrew did not use his dominant hand, he did not step down from the perch he was on to have better balance, and he did not throw the handrailing with his full physical power – all of which he could have done had he so chosen.

The defense has reviewed all the videos submitted by the government and will be prepared to answer any questions the court may have at the continued hearing on the Defendant's motion on November 2, 2021.


Date: October 31, 2021                                Respectfully Submitted,

*John M. Pierce*

John M. Pierce (*PHV Admitted*)
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725
Email: jpierce@piercebainbridge.com

*Attorney for Defendant James Burton McGrew*

**CERTIFICATE OF SERVICE**

    I, John M. Pierce, hereby certify that on this day, October 31, 2021, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

                                          /s/ John M. Pierce
                                          John M. Pierce