AO 472 (Rev. 11/16; DC 1/19) Order of Detention

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JAMES BURTON MCGREW | ) Case No.  21-cr-398 (BAH) | |
| *Defendant* | ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:
  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
    ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
    ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
    ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
    ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
    ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
      **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
      **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
  ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
  ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
  ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

❒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

- ❒ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);
- ❒ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;
- ❒ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
- ❒ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**
- ❒ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

❒ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

❒ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis, with the evidence or argument presented by the defendant summarized in Part III.C.

❒ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

**OR**

❒ The defendant has not presented sufficient evidence to rebut the presumption. Moreover, after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

### Part III - Analysis and Statement of the Reasons for Detention

A. After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☑ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

B. In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☑ Weight of evidence against the defendant is strong
☑ Subject to lengthy period of incarceration if convicted
☑ Prior criminal history
☑ Participation in criminal activity while on probation, parole, or supervision

- ❏ History of violence or use of weapons
- ❏ History of alcohol or substance abuse
- ❏ Lack of stable employment
- ❏ Lack of stable residence
- ❏ Lack of financially responsible sureties
- ❏ Lack of significant community or family ties to this district
- ❏ Significant family or other ties outside the United States
- ❏ Lack of legal status in the United States
- ❏ Subject to removal or deportation after serving any period of incarceration
- ❏ Prior failure to appear in court as ordered
- ❏ Prior attempt(s) to evade law enforcement
- ❏ Use of alias(es) or false documents
- ❏ Background information unknown or unverified
- ☑ Prior violations of probation, parole, or supervised release

**C. OTHER REASONS OR FURTHER EXPLANATION:**

The defendant's evidence/arguments for release:

  See attachment.

Nature and circumstances of offense:

  See attachment.

The strength of the government's evidence:

  See attachment.

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

The defendant's history and characteristics, including criminal history:

See attachment.

The defendant's dangerousness/risk of flight:

See attachment

### Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: 11/02/2021

BERYL A. HOWELL
Chief United States District Judge
United States District Court for the District of Columbia

**ATTACHMENT TO ORDER OF DETENTION PENDING TRIAL, PART III. C:**
**Consideration of Defendant's evidence/arguments for release and**
**18 U.S.C. § 3142(g) Factors**

(1) **The Nature and Circumstances of the Offense**:

The nature and circumstances of the offense weigh heavily in favor of detention. Defendant is charged with seven felonies and three misdemeanor offenses, Superseding Indictment, ECF No. 38, based on his alleged offense conduct, on January 6, 2021, of participating at the riot on Capitol grounds for nearly two hours, recruiting and encouraging others to participate in the forced entry into the building, pushing against and aggressively confronting multiple lines of officers, physically fighting an officer in the Capitol Rotunda, grabbing at a baton held by another officer, actively directing other rioters to fortify a line against officers, and launching a long segment of handrail towards officers protecting the Lower West Terrace tunnel entrance—striking one officer. *See* Gov't's Opp'n Def.'s Mot. Recons. Detention Order ("Gov't's Opp'n") at 3, ECF No. 24; Videos 3, 4, 5, 7.[1]

The government proffers—and has furnished compelling video evidence showing—that defendant was an unusually aggressive participant in the angry mob attacking the Capitol, repeatedly appearing at, and engaging in, the front lines of confrontations with law enforcement officers, and at times assuming a de facto leadership role in mobilizing opposition to law enforcement. At around 2:30 PM, defendant was "at the front line of rioters" when the mob breached a police line on the West Plaza. Gov't's Opp'n at 3–5; Video 8. Defendant is seen in open source video being hit by a chemical spray and subsequently leaning down in obvious

---

[1] The government provided a total of seventeen video exhibits to the Court, including videos relied upon by defendant in his briefing, and filed a series of reports identifying and describing the videos. *See* Gov't's Resp. Ct.'s Oct. 25, 2021 Order, ECF No. 28 (identifying Videos 1 through 7); Gov't's Resp. Ct.'s Orders, ECF No. 34 (Videos 8 through 13); Gov't's Suppl. Resp. Ct.'s Orders, ECF No. 35 (Video 14); Gov't's Resp. Def.'s Reply, ECF No. 37 (Videos 15 through 17). The government was directed, following no opposition from the parties, to make the video exhibits publicly available using the "drop box" technical solution described in Standing Order 21-28, *In re: Media Access to Video Exhibits in Pretrial Capitol Cases*. Min. Order (Oct. 26, 2021); Min. Order (Nov. 1, 2021).

discomfort.  Gov't's Opp'n at 5; Video 8.  Undeterred, within minutes defendant records a video in which he is heard encouraging the mob with numerous shouts of "Let's Go!" and recruiting participants to unlawfully enter the building: "We need more people!  Come on, come on!"  Gov't's Opp'n at 17, 22; Video 12.  That video ends with defendant gleefully proclaiming, "We took this thing!" just before he entered the building at around 2:45 PM.  Video 12.

      Once inside the Capitol building, defendant made his way into the building and, at around 2:52 PM, was among rioters in a faceoff with officers blocking the corridor near the Old Senate Chamber.  Defendant verbally taunted the officers, threatening that "we're coming in . . . whether you like it or not," Gov't's Opp'n at 6; Video 9, and urging officers to "fight[] with us, not against us," and filmed himself reciting officers' names and badge numbers, Gov't's Opp'n at 6; Video 9.  Defendant then made his way to the Rotunda, where at around 3:03 PM he faced off with officers trying to control the mob and preparing to push rioters towards an exit from the Rotunda, and taunted officers by calling them "fucking traitors."  Video 13.  At around 3:05 PM, defendant's conduct escalated when, in a hand-to-hand tussle with officers, defendant apparently struck one police officer.  Gov't's Opp'n at 6; Video 3.  Defendant's purpose was clear when, responding at 3:06 PM to an officer ordering him to leave, he shouted "You leave! You leave! . . . This is our house; this is your job; this ain't your house."  Gov't's Opp'n at 7; Video 3.  Defendant further taunted that there were "way more of us" than officers—indeed, "two million people out there" who were "tired of this shit."  Video 13.  In another hands-on interaction with officers, at 3:08 PM defendant was seen grabbing at a baton held by an officer trying to push back the crowd, and seconds later defendant was in sole possession of that baton.  Gov't's Opp'n at 8; Video 4.  While defendant did immediately hand the baton back to an officer, prompting a response of "thank you," Gov't's Opp'n at 8; Video 4, that brief moment of relative civility does

little to offset defendant's overall culpability in the Capitol attack. Indeed, just seconds later, defendant joined arms with other rioters on the front line facing off with officers and implored others to do the same, repeatedly shouting "Lock Arms!" Gov't's Opp'n at 8; Video 4. All the while, officers were ordering rioters to move back and to back up, and pushing the mob towards the exit.

Defendant left the building through the East Rotunda Doors at 3:22 PM, Gov't's Opp'n at 8–9; Video 10, but did not leave the Capitol grounds. Instead, over the next 45 minutes, defendant made his way to the opposite side of the building and by 4:07 PM appears in CCTV video at the Lower West Terrace archway door (the "tunnel"), having made his way, again, to the frontlines of the densely-packed mob facing off with officers defending that entrance to the Capitol. Gov't's Opp'n at 9–10; Video 17. Defendant was again hit by a chemical spray discharged by an officer or a rioter at 4:11 PM, Gov't's Opp'n at 11; Video 5, but was again undeterred. At 4:13 PM, another rioter fed a long segment of handrail (a "pole") across the top of the crowd and passed it to defendant, who within seconds and from an elevated position took the pole, wielded it over his head, looked around, took aim, and at 4:14 PM lobbed it some 10 feet into the tunnel towards several officers—apparently striking one. Gov't's Opp'n at 11; Videos 5, 7. For the next approximately five minutes, until about 4:20 PM, defendant joined with the mob in front of the tunnel attempting to push its way in. Gov't's Opp'n at 13–14; Video 6. The police line at the tunnel ultimately held and officers were able to regain control of the tunnel, but not until after the mob had made some headway pushing the officers inwards. Video 6.

All told, over the course of two hours, defendant made his way to the front lines of several points of attack on the Capitol: the West Plaza, the Rotunda, and at the Lower West

Terrace tunnel.  Undeterred by encounters with a chemical agent that plainly caused him discomfort, he confronted and assaulted officers, used a segment of railing as a missile against officers guarding the tunnel, took control (albeit briefly) of an officer's baton, and mobilized and encouraged others to join him in resisting law enforcement officers.  All this conduct contributed to the chaos at the Capitol, the evacuation of Congress, the Vice President, and staff, and the extended interruption to the constitutionally mandated process of certifying electoral votes in the 2020 election.

      As a result of this offense conduct, defendant is charged with seven serious felony offenses.  Specifically, he is charged with (1) committing or attempting to commit any act to obstruct, impede, or interfere with any law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function, in violation of 18 U.S.C. § 231(a)(3), which offense carries up to 5 years imprisonment; (2) corruptly obstructing, influencing, or impeding any official proceeding, or attempting to do so, in violation of 18 U.S.C. § 1512(c)(2), which offense carries up to 20 years imprisonment; (3) forcibly assaulting, resisting, opposing, impeding, intimidating or interfering with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties, where such acts involve physical contact with the victim of that assault or the intent to commit another felony, in violation of 18 U.S.C. § 111(a)(1), which offense carries up to 8 years imprisonment; (4) forcibly assaulting, resisting, opposing, impeding, intimidating or interfering with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties and, in the commission of such acts, using a deadly or dangerous

weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicting bodily injury, in violation of 18 U.S.C. § 111(a)(1) and (b), which offense carries up to 20 years imprisonment; (5) knowingly entering or remaining in any restricted building or grounds without lawful authority while using or carrying a deadly or dangerous weapon in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A), which offense carries up to 10 years imprisonment; (6) knowingly, and with intent to impede or disrupt the orderly conduct of government business or official functions, engaging in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of government business and official functions while using or carrying a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A), which offense carries up to 10 years imprisonment; and (7) knowingly engaging in any act of physical violence against any person or property in any restricted building or grounds while using or carrying a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A), which offense carries up to 10 years imprisonment. The government proffers that "a pole" with a "metal hook" at one end wielded by defendant and launched in the direction of officers qualifies as a dangerous weapon, supporting felony Counts IV through VII. Gov't's Opp'n at 11. Defendant is also charged with three misdemeanor offenses in violation of 40 U.S.C. § 5104(e)(2).

      Defendant's assumption of a "de facto leadership role in the assault by encouraging other rioters' misconduct" by "urging rioters to advance on the Capitol [and] to confront law enforcement . . . enhances the defendant's responsibility for the destabilizing events of January 6 and thus the seriousness of his conduct." *United States v. Chrestman*, 525 F. Supp. 3d 14, 26–27 (D.D.C. 2021). Furthermore, defendant "attempted to injure" officers, *id.* at 27, through such

actions as striking officers both by hand and by launching a pole into a crowded tunnel entrance, implicating "[g]rave concerns" as to "defendant's disregard for the institutions of government and the rule of law," *id*.

The D.C. Circuit has instructed that "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). This defendant falls within the "different category" of January 6 defendants identified in *Munchel* by virtue of having assaulted police officers and having actively encouraged fellow rioters to join him in invading the building and fortifying a line of resistance against officers trying to clear the Rotunda. By contrast, the defendants in *Munchel*, though carrying a dangerous weapon (taser) inside the Capitol, did not activate the weapon, vandalize any property, or physically harm any person. *Id*.

The nature and circumstances of defendant's offense conduct weigh heavily in favor of pretrial detention.

**(2) The Weight of the Evidence Against the Person:**

The weight of the evidence against this defendant also strongly favors pretrial detention. The Court has examined seventeen videos collectively showing defendant engaging in the offense conduct underlying the charges against him. Most of the facts of defendant's involvement with the Capitol attack are undisputed. One point of disagreement concerns whether defendant actually struck an officer during his hand-to-hand encounter in the Rotunda. *See* Def.'s Supp. Reply Supp. Mot. Revoke Detention Order at 5–7, ECF No. 36. Another concerns whether, before defendant returned a baton to officers, defendant wrested that baton

from an officer in the Rotunda or whether the officer merely lost his grip on it. *See id.* at 7–9. Even so, defendant's actions on the afternoon of January 6, 2021, unmistakably involved multiple, undisputed episodes of confrontation with officers at the front lines, encouragement of fellow rioters, physical altercations, and the hurling of a long pole as a projectile towards officers.

(3) **The History and Characteristics of the Person**:

Defendant has ties to the Biloxi, Mississippi area where he lives with his mother. Pretrial Services Report ("PSR") at 1, 11, ECF No. 12. His military service in Iraq deserves respect, as does his potential ongoing need for medical care. These facts weigh in defendant's favor in terms of risk of flight.

On the other hand, defendant has a substantial, acknowledged criminal history involving matters including theft, controlled substance offenses, and contempt of court. PSR at 3–7. Most notably, defendant was imprisoned for two years for an auto theft conviction, PSR at 4; Gov't's Opp'n at 24, and was on parole for that offense until March 2021—including on January 6, 2021, when he committed two parole violations by traveling to Washington, D.C. without permission and committing the instant offenses. Gov't's Opp'n at 24. On March 13, 2021, defendant transitioned to probation under the supervision of a probation officer in Mississippi. *Id.* Since that time, defendant has traveled across state lines multiple times without permission, and in May 2021 left the country for an unauthorized trip to Mexico. *Id.*[2]

In sum, defendant's demonstrated inability to comply with conditions of release weighs in favor of detention.

---

[2]   Defendant disputes whether all of his out-of-state travels in 2021 have been unauthorized. He does not, however, contest the most alarming incident: his departure from the United States.

### (4) The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Person's Release:

The nature and seriousness of the danger to the community posed by the defendant's release weigh in favor of detention. Defendant enthusiastically participated in the mob attack on the Capitol in which many people, including police officers, suffered grievous injury and Congress's constitutional task of counting electoral college votes was disrupted and delayed for hours.

On account of his violent behavior, defendant squarely sits within the "different category" of defendants contemplated by the D.C. Circuit in *Munchel*, 991 F.3d at 1284. To be sure, a defendant's participation in violence against law enforcement on January 6 does not, itself, yield a presumption of detention. Under the Bail Reform Act, defendant's violent conduct must be used in "an individualized assessment of future dangerousness." *United States v. Khater*, 856 Fed. App'x 322, 323 (D.C. Cir. 2021).

The Court finds that the facts of this case show that defendant's dangerousness is not limited to "the particular circumstances of January 6." *Munchel*, 991 F. 3d at 1283. Defendant's blatant and repeated confrontations with law enforcement on January 6, coupled with his exhortations on multiple occasions for others to join in conduct hostile to officers protecting the Capitol and others' safety—even the safety of the rioters themselves—demonstrate a complete disregard for the law and willingness to use force to achieve political ends, raising serious concerns about the danger that defendant poses if released pending trial and makes plain that the danger he presents is not isolated to the context of the events of January 6.

This factor weighs in favor of detention.