

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Case No.: 1:21-cr-398 (BAH) |
| v. | : |
| | : 18 U.S.C. § 111(a)(1) |
| JAMES BURTON McGREW | : |
| | : |
| Defendant. | : |

### STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, James McGrew, with the concurrence of his attorneys, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint

session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *McGrew's Participation in the January 6, 2021 Capitol Riot*

8. On January 6, 2021, the defendant traveled from the former President's rally on the Ellipse to the West Plaza of the U.S. Capitol grounds. The defendant cheered as he and fellow rioters overwhelmed a line of law enforcement officers who were attempting to prevent the crowd from advancing further onto the restricted Capitol grounds and toward the U.S. Capitol Building.

9. The defendant worked his way to the front of the crowd until he was face-to-face with a handful of officers protecting a larger group of retreating law enforcement officers. After engaging with the officers, the defendant was impacted by a chemical agent, which caused him to fall back, take off his hat and scarf, cough and spit, and lift his shirt to wipe his eyes, nose, and mouth.

10. The defendant then proceeded to an area outside the Upper West Terrace doors to the U.S. Capitol Building. The defendant filmed the scene around the outside of the U.S. Capitol Building while screaming, "four more years," "let's go, we need more people," and "come on, come on." The defendant shouted, "let's go" approximately 14 times. At one point, as the camera turned black and the sound of barricades being pushed was audible, the defendant yelled, "we took this thing."

11. At 2:45 p.m., the defendant unlawfully entered the U.S. Capitol Building through the Upper West Terrace doorway. The defendant knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building.

12. At approximately 2:58 p.m., the defendant arrived in the Great Rotunda of the U.S. Capitol Building. Minutes later, law enforcement officers began the process of moving rioters out of the room towards the East Rotunda Doors exit.

13. At approximately 3:05 p.m., the defendant pushed an unknown officer and then struck a Metropolitan Police Department officer standing before him.

14. After assaulting the officer, the defendant retreated several feet from the police line, but did not leave the Rotunda. Seconds later, the defendant moved forward, re-approaching the officers while screaming. When an officer calmly told the defendant, "just leave, just leave man, come on," the defendant responded by screaming, "You leave. You leave. This is our house."

15. The officers again attempted to move the defendant and his fellow rioters across the room to the exit closest to the East Rotunda Doors. At approximately 3:07 p.m., when another Metropolitan Police Department officer used his baton to push the defendant and other rioters closer to the exit, the defendant struck the officer and lunged for the officer's baton.

16. At approximately 3:08 p.m., the defendant engaged in an altercation with a third Metropolitan Police Department officer. As the officer approached the defendant, the officer repeatedly stated to the defendant and others, "back up, back up." A struggle ensued between the Metropolitan Police Department officer and the defendant, during which the defendant grabbed another officer's baton, and then returned it. Seconds later, the defendant began to shout "lock arms" to other rioters and then proceeded to lock arms and stand still, in defiance of the officers' orders.

17. The Metropolitan Police Department officers eventually pushed the defendant and other rioters out of the Rotunda. The defendant exited the U.S. Capitol through the East Rotunda Doors at 3:22 p.m.

18. About 45 minutes later, the defendant arrived at the front of the Lower West Terrace tunnel on the restricted U.S. Capitol Building grounds. At that time, a crowd of rioters was attacking law enforcement officers who were defending the Lower West Terrace tunnel entrance to the U.S. Capitol Building, near the temporary stage built for the presidential inauguration.

19. At approximately 4:13 p.m., as the defendant was standing near the tunnel, another rioter handed the defendant a wooden handrail with metal brackets attached, almost the same height as the defendant, which the defendant accepted with his left hand. The defendant then positioned the wooden handrail over his head and launched it into the tunnel, throwing the end with the metal brackets towards the law enforcement officers. The wooden handrail appeared to hit the shield/visor of an officer. The officers within the tunnel then grabbed the wooden handrail and passed it back towards other officers so that it would not be available for the rioters to use in further assaults.

20. Shortly thereafter, in a coordinated effort with other rioters, the defendant began pushing into the tunnel and pushing the officers within the tunnel back. The defendant and other rioters gained access into the tunnel until approximately 4:20 p.m., when Metropolitan Police Department and the U.S. Capitol Police officers pushed the rioters out and regained control of the tunnel.

### *Elements of the Offense*

21. The defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. §1114 while engaged in or on account of the performance or their official duties.

22. Specifically, the defendant admits that he launched a wooden handrail into the Lower West Terrace tunnel toward officers of the Metropolitan Police Department and United States Capitol Police. When utilized in this manner, the handrail was capable of causing death or serious bodily injury and, at the time he threw it, the defendant intended to cause bodily injury. The defendant further admits that when he assaulted the officers with the handrail, he knew that the officers were engaged in the performance of their official duties and he assaulted the officers on account of their performance of their official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: */s/ Jordan A. Konig*
Jordan A. Konig
Trial Attorney, U.S. Department of Justice

## DEFENDANT'S ACKNOWLEDGMENT

I, James McGrew, have read this Statement of the Offense and have discussed it with my attorneys. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4-20-22

James McGrew
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4/28/22

William Shipley
Attorney for Defendant