FILED
MAY 13 2022
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :
:
v. : Case No. 1:21-cr-398 (BAH)
:
JAMES McGREW, :
:
Defendant. :

## SUBMISSION BY THE UNITED STATES IN SUPPORT OF GUILTY PLEA

Pursuant to a written plea agreement, dated April 4, 2022, and signed by the defendant, James McGrew (the "defendant") on April 20, 2022 and his counsel on April 28, 2022, the defendant agreed to plead guilty to Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a)(1), a lesser-included offense in Count IV of the Indictment.

The plea agreement was entered pursuant to Fed. R. Crim. P. 11(c)(1)(A), as the defendant intends to plead guilty to a lesser-included offense in Count IV of the Indictment, and, in consideration of such guilty plea, the government will move to dismiss the remaining counts of the Indictment and will not further prosecute the conduct set forth in the Statement of Offense.

### I. Charged Offenses

The defendant is charged in the Indictment with ten offenses:

Count I: Civil Disorder, in violation of Title 18, United States Code, Section 213(a)(3);

Count II: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

Count III: Assaulting, Resisting, or Impeding Certain Officers, in violation of Title 18, United States Code, Sections 111(a)(1);

Count IV: Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of Title 18, United States Code, Sections 111(a)(1) and (b);

Count V: Entering and Remaining in a Restricted Building or Grounds with a Deadly or

Dangerous Weapon, in violation of Title 18, United States Code, Section 1752(a)(1) and (b)(1)(A);

Count VI: Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, Section 1752(a)(2) and (b)(1)(A);

Count VII: Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, Section 1752(a)(4) and (b)(1)(A);

Count VIII: Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D);

Count IX: Act of Physical Violence in the Capitol Grounds or Buildings, in violation of Title 40, United States Code, Section 5104(e)(2)(F); and,

Count X: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).

II. **Elements of the Offenses**

To prove that the defendant is guilty of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), the government must prove the following beyond a reasonable doubt:

   a. That the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government;

   b. That the defendant did so with some use of force;

   c. That the defendant did so while the officer or employee was engaged in or on account of the performance of official duties; and,

   d. That the assault involved physical contact with the victim or the intent to commit another felony.

### III. Maximum Penalties

The maximum penalties for Assaulting, Resisting, or Impeding Certain Officers are:

a.  A term of imprisonment of not more than eight years;

b.  A term of probation or supervised release of not more than three years;

c.  A fine not to exceed $250,000;

d.  A special assessment of $100; and,

e.  An obligation to pay any applicable interest or penalties on fines and restitution not timely made.

### IV. Sentencing Guidelines

For Count IV of the Indictment, United States Sentencing Guidelines (U.S.S.G.) Section 2A2.2(a) provides a base offense level of 14. Because the defendant used a dangerous weapon, a wooden handrail with metal brackets attached, U.S.S.G. § 2A2.2(b)(2)(B) applies a four-level enhancement. In addition, because the defendant assaulted a law enforcement officer in a manner creating a substantial risk of serious bodily injury, U.S.S.G. § 3A1.2(c)(1) applies a six-level enhancement. With a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the parties have agreed that the Estimated Offense Level will be at least 21.

Based upon the information now available to the government, the defendant has a 2009 conviction for Possession of Precursor Chemicals or Drugs; a 2011 conviction for Shoplifting; a 2013 conviction for Felony Shoplifting; and a 2016 conviction for Motor Vehicle Theft. The defendant also committed this offense while under parole, U.S.S.G. § 4A1.1. He is estimated to have a 12 criminal history points and a Criminal History Category of V. Accordingly, the defendant's estimated Sentencing Guidelines range is 70 months to 87 months. In addition, pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines level 21, the estimated

applicable fine range is $15,000 to $150,000.

## V. Proffer of Evidence

The following statement of facts does not purport to include all of the defendant's illegal conduct. It is intended to represent sufficient information for the Court to find a factual basis for accepting the defendant's guilty plea.

Had this case proceeded to trial, the government's evidence would have established beyond a reasonable doubt that:

### *The Attack on the U.S. Capitol on January 6, 2021*

The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public. On that day, a joint session of the United States Congress convened at the United States Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As

noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been

confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *James Burton McGrew's Participation in the January 6, 2021 Capitol Riot*

On January 6, 2021, the defendant traveled from the former President's rally on the Ellipse to the West Plaza of the U.S. Capitol. The defendant cheered as he and fellow rioters overwhelmed a line of law enforcement officers who were attempting to prevent the crowd from advancing further onto the restricted Capitol grounds and toward the U.S. Capitol Building. The defendant worked his way to the front of the crowd until he was face-to-face with a handful of officers protecting a larger group of retreating law enforcement officers. After engaging with the officers, the defendant was impacted by a chemical agent, which caused him to fall back, take off his hat and scarf, cough and spit, and lift his shirt to wipe his eyes, nose, and mouth.

The defendant then proceeded to an area outside the Upper West Terrace doors to the U.S. Capitol Building. The defendant filmed the scene around the outside of the U.S. Capitol Building while screaming, "four more years," "let's go, we need more people," and "come on, come on." The defendant shouted, "let's go" approximately 14 times. At one point, as the camera turned black and the sound of barricades being pushed was audible, the defendant yelled, "we took this thing."

At 2:45 p.m., the defendant unlawfully entered the U.S. Capitol Building through the Upper West Terrace doorway. The defendant knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building. At approximately 2:58 p.m., the defendant arrived in the Great Rotunda of the U.S. Capitol Building. Minutes later, law enforcement officers began the process of moving rioters out of the room towards the East Rotunda Doors exit. At

approximately 3:05 p.m., the defendant pushed an unknown officer and then struck a Metropolitan Police Department officer standing before him.

After assaulting the officer, the defendant retreated several feet from the police line, but did not leave the Rotunda. Seconds later, the defendant moved forward, re-approaching the officers while screaming. When an officer calmly told the defendant, "just leave, just leave man, come on," the defendant responded by screaming, "You leave. You leave. This is our house." The officers again attempted to move the defendant and his fellow rioters across the room to the exit closest to the East Rotunda Doors. At approximately 3:07 p.m., when another Metropolitan Police Department officer used his baton to push the defendant and other rioters closer to the exit, the defendant struck the officer and lunged for the officer's baton. At approximately 3:08 p.m., the defendant engaged in an altercation with a third Metropolitan Police Department officer. As the officer approached the defendant, the officer repeatedly stated to the defendant and others, "back up, back up." A struggle ensued between the Metropolitan Police Department officer and the defendant, during which the defendant grabbed another officer's baton, and then returned it. Seconds later, the defendant began to shout "lock arms" to other rioters and then proceeded to lock arms and stand still, in defiance of the officers' orders.

The Metropolitan Police Department officers eventually pushed the defendant and other rioters out of the Rotunda. The defendant exited the U.S. Capitol through the East Rotunda Doors at 3:22 p.m. About 45 minutes later, the defendant arrived at the front of the Lower West Terrace tunnel on the restricted U.S. Capitol grounds. At that time, a crowd of rioters was attacking law enforcement officers who were defending the Lower West Terrace tunnel entrance to the U.S. Capitol Building, near the temporary stage built for the presidential inauguration.

At approximately 4:13 p.m., as the defendant was standing near the tunnel, another rioter

handed the defendant a wooden handrail with metal brackets attached, almost the same height as the defendant, which the defendant accepted with his left hand. The defendant then positioned the wooden handrail over his head and launched it into the tunnel, throwing the end with the metal brackets towards the law enforcement officers. The wooden handrail appeared to hit the shield/visor of an officer. The officers within the tunnel then grabbed the wooden handrail and passed it back towards other officers so that it would not be available for the rioters to use in further assaults. Shortly thereafter, in a coordinated effort with other rioters, the defendant began pushing into the tunnel and pushing the officers within the tunnel back. The defendant and other rioters gained access into the tunnel until approximately 4:20 p.m., when Metropolitan Police Department and the U.S. Capitol Police officers pushed the rioters out and regained control of the tunnel.

The defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. §1114 while engaged in or on account of the performance or their official duties. Specifically, the defendant launched a wooden handrail into the Lower West Terrace tunnel toward officers of the Metropolitan Police Department and United States Capitol Police. When utilized in this manner, the handrail was capable of causing death or serious bodily injury and, at the time he threw it, the defendant intended to cause bodily injury. When he assaulted the officers with the handrail, he knew that the officers were engaged in the performance of their official duties and he assaulted the officers on account of their performance of their official duties.

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By: /s/ Jordan A. Konig
JORDAN A. KONIG
Trial Attorney, U.S. Department of Justice

Detailed to the U.S. Attorney's Office
For the District of Columbia
P.O. Box 55, Washington, D.C. 20044
202-305-7917 (v) / 202-514-5238 (f)
Jordan.A.Konig@usdoj.gov