UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-CR-00398-BAH |
| v. | : | |
| | : | |
| JAMES BURTON MCGREW, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' OPPOSITION TO THE DEFENDANT'S MOTION**

The government files this opposition to the defendant's Motion for Temporary Relocation to BOP Medical Facility for Urgent Diagnosis and Treatment [#75]. The defense seeks relief in the form of transportation to a Bureau of Prisons (BOP) facility and otherwise attempts to renew an earlier motion, effectively seeking revocation of the order for his pretrial detention. For the reasons provided below, this Court should decline to transfer the defendant, as such a transfer rests within the sole discretion of the United States Marshals (USMS). Moreover, although the government is not indifferent to the serious medical symptoms the defendant is experiencing, this Court should also deny the defendant's request for release.

**I.      The Defendant Fails To Establish Adequate Factual or Legal Grounds for the Relief He Seeks**

**A.  *Relevant Background***

A Superseding Indictment [#38] charges the defendant with serious felonies including crimes of violence arising from his role in the siege of the United States Capitol on January 6, 2021. To avoid repetition, the United States refers to the procedural and factual history contained in its Memorandum in Opposition to the Defendant's Motion for Bail [#24] to the defendant's earlier Motion for Reconsideration [#23].

Throughout the pendency of this case, the defendant has raised issues concerning his health.  The United States has consistently maintained that the defendant should receive appropriate medical care.  In December 2021, this Court acted to address medical concerns the defense had previously raised concerning serious symptoms the defendant was experiencing.  Since then, the government has not been made aware of any issues in the intervening time.  Following its receipt of the defendant's motion on July 30, 2022, the government contacted both the U.S. Marshals Service and the D.C. Department of Corrections on July 31st, August 1st, August 2nd and August 4th.  The government learned that both the defendant's underlying blood tests and the MRI have been completed since the defense filing.  The defendant is scheduled for a gastroenterology appointment this month, at which time it will be determined whether the MRI is sufficient to make a diagnosis or whether further diagnostic tests are necessary.  The government has been assured by the D.C. Department of Corrections that, if the MRI is not sufficient to diagnose the defendant and a colonoscopy is necessary, it will not take months to schedule.  The medical team at the D.C. Department of Corrections represents that Mr. McGrew's care is appropriate.

    **B.**  *This Court Should Deny The Defendant's Application For a Transfer*

The defendant seeks a transfer to a BOP medical facility.  If such a transfer occurs, it will interfere with the care he is currently receiving.  Such a transfer may potentially result in a period of quarantine and does not necessarily guarantee that he will receive different or more expeditious treatment.

Aside from any such practical considerations, however, this Court's analysis of the defendant's demand for a transfer should begin with relevant statutory authorities.  When a person has been arrested and ordered detained by a federal court pending trial, Congress has

provided under the Bail Reform Act of 1984 that "the court shall direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility....". 18 U.S.C. § 3142(i)(2). Moreover, the provisions of 18 U.S.C. § 4086 provide:

> United States Marshals shall provide for the safe keeping of any person arrested, or held under authority of any enactment of Congress, pending commitment to an institution.

*See also* 28 C.F.R. § 0.111(k)[1]; *United States v. Bingham*, No. 14-CR-20676, 2016 WL 4944138, at *3 (E.D. Mich. Sept. 15, 2016) (finding that Section 4086 governs pretrial detainees' demands for transfer).

Courts considering Section 4086's broad grant of authority to the USMS when confronted with a demand for transfer from a pretrial detainee:

> have uniformly concluded that determining a detainee's placement is within the sole discretion of the USMS and, where applicable, have refused a detainee's request to be transferred to another facility. *See, e.g.*, *United States v. Dixon*, 2021 WL 4129623, at *2 (D.N.D. Sept. 9, 2021); *Phillips v. United States*, 2022 WL 705335, at *2 (D. Kan. Mar. 9, 2022); *Cometa*, 2018 WL 11247169 at *1; *Espinoza-Arevalo*, 2015 WL 9598299, at *3; *Valdez v. U.S. Marshal Serv.*, 2014 WL 4103204, at *4 n.5 (W.D. La. Aug. 13, 2014); *United States v. Stile*, 2013 WL 12195872, at *2 (D. Me. Nov. 27, 2013); *Saunders*, 502 F. Supp. 2d at 496; *Falcon v. U.S. Bureau of Prisons*, 852 F. Supp. 1413, 1420 (S.D. Ill. 1994), *aff'd on other grounds*, 52 F.3d 137 (7th Cir. 1995).

*United States v. Thomas*, No. 3:20-CR-51 (SRU), 2022 WL 2315624, at *4–5 (D. Conn. June 28, 2022); *see also United States v. Owle*, No. 2:09CR27, 2010 WL 3259790, at *5–6 (W.D.N.C. Aug. 18, 2010) ("Because the care of a custodial defendant is left to the sound discretion of the Marshal, who is ultimately responsible for defendant's well being, the court takes no role in

---

[1] This regulation states that the Director of the USMS shall direct and supervise all activities of the USMS including "[s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence, otherwise released from custody by the court, or returned to the custody of the U.S. Parole Commission or the Bureau of Prisons." 28 C.F.R. § 0.111(k).

determining what is or is not the appropriate care"), *review granted, judgment aff'd*, No. 2:09 CR 27, 2010 WL 3522258 (W.D.N.C. Sept. 7, 2010).

The defense motion fails to support judicial intervention in the form of a transfer or otherwise because it fails to meet the standard for such relief. A defendant's constitutional rights, including the right to due process, are not violated just because of housing in a prison setting. *E.g.*, *Phillips v. United States*, No. 22-3006-SAC, 2022 WL 705335 at *2 (D. Kan. Mar. 9, 2022). When a detainee properly raises a claim of unconstitutional conditions of confinement in the correct forum, the claim is evaluated under the Due Process clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To raise such a claim, the detainee must show a restriction that is intended as punishment or that is unrelated to a legitimate governmental objective. *Id*. Conclusory allegations without supporting facts are insufficient to state a claim on which relief under *Bell* can be based, and a detainee must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Phillips*, 2022 WL 705335 at *3. Here, like the defendant in *Phillips*, McGrew has not alleged facts that show his treatment constitutes punishment or even that his treatment differs from similarly situated detainees. Moreover, a detainee's dispute with decisions about medical care do not trigger review in a criminal case but fall instead within the broad discretion of the detainee's custodian. As one court has explained:

> What medications or treatment a defendant may or may not need are left to the sound discretion of the United States Marshal, who contracts with jail facilities or doctors and other medical personnel to evaluate the needs of each detainee. Just as in the private world, one doctor may believe a patient needs one type of medication while another doctor at another institution may believe a patient needs another medication. A federal court simply lacks jurisdiction in the criminal case to determine what is or is not appropriate care. Instead, federal courts only have civil authority in such matters as provided in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), *Carlson v. Green,* 446 U.S. 14 (1980), and as specified in the Federal Torts Claims Act. See *Petrazzoulo v. U.S.*

*Marshals Service,* 999 F.Supp. 401, 406 (W.D.N.Y.1998).[2] Because the care of a custodial defendant is left to the sound discretion of the Marshal, who is ultimately responsible for defendant's well being, the court takes no role in determining what is or is not the appropriate care.

*United States v. Burgess*, No. 1:09CR17, 2010 WL 2465553, at *3–4 (W.D.N.C. June 14, 2010), *report and recommendation adopted*, No. 1:09-CR-17, 2010 WL 3122634 (W.D.N.C. Aug. 9, 2010).

### C.  *This Court Should Deny The Defendant's Application For Release*

For the reasons laid forth in the government's Memorandum in Opposition to the Defendant's Motion for Bail [#24] concerning the defendant's danger to the community as well as his risk of flight, the government would object to the defendant's release. The government would specifically object to the defendant's release to his mother, who attended the January 6 riot with the defendant, even though he was on parole at the time. Moreover, even after the defendant pled guilty in this case on May 13, 2022, the defendant and his mother have continuously asserted his innocence and that he is a political prisoner. The government raises this to the Court not to diminish the seriousness of the defendant's health, but to provide the Court context as to the defendant and his mother's mindset and ideology, which has remained consistent.

Since the defendant has been incarcerated, the defendant's mother has fundraised for the defendant on the website "Give Send Go." *See* "Help Free James Mcgrew," at

---

[2] Claims based on conditions of confinement are properly raised in separate civil actions and this is no less true when the relief requested is a transfer within or to a different detention facility, as reflected in the citation above to *Burgess*. *See also United States v. Rojas-Yepes*, 630 F.Supp. 2d 18, 20 (D.D.C. 2009)(defendant seeking transfer from administrative segregation to general population); *United States v. Braswell*, No. 1:18-CR-0034-DAD-BAM, 2018 WL 3583112 at *1 (E.D. Cal. July 25, 2018)(defendant seeking transfer after physical assault); *United States v. Thomas*, No. 3:20-CR-51 (SRU), 2022 WL 2315624, at *4–5 (D. Conn. June 28, 2022)(transfer sought because of bedding, lockdowns, and medical issues).

https://www.givesendgo.com/G26SJ (last visited on August 4, 2022). The campaign was created by Leslie McGrew. *Id.* The website has raised $33,157 so far. *Id.* The first sentence of the page description is "My son is being held as a Political Prisoner in Washington for Jan 6th Rally." *Id.* On June 21, 2022, the website provided the following update:

> As my son approaches his 455 days in DC Gulag nothing has changed. There is still no TRUE JUSTICE being upheld. The House Speaker Nancy Pelosi, Chuck Shumer and Mayor Browser are responsible for NOT FOLLOWING PROTOCOL with ADEQUATE SECURITY FOR JAN 6TH. THE DC POLICE LET THEM IN AND THEN CORRALLED THEM OUT WITH FORCE. JUSTICE WILL NOT BE SECURE UNTIL THE PEOPLE THAT ARE RESPONSIBLE FOR THIS ARE HELD ACCOUNTABLE. THANK YOU ALL FOR YOUR GENEROUS SUPPORT AND PRAYERS. GOD BLESS AND GOD BLESS AMERICA

*Id.*

Likewise, on June 3, 2022, the defendant provided an interview from D.C. Jail to radio host Sandy Rios of the "Sandy Rios in the Morning" on American Family Radio. *See* "Update with J6 Prisoners: James McGrew and Shane Jenkins," at https://afr.net/podcasts/sandy-rios-in-the-morning/2022/june/update-with-j6-prisoners-james-mcgrew-and-shane-jenkins/ (last visited on August 4, 2022). During the interview, the host noted that the interview was made possible by the defendant's mother. *Id.* at 17:18-17:26. When asked if he was at the Lower West Terrace where, according to the radio host, the police assaulted rioters, the defendant proceeded to provide an alternative version of his conduct from January 6 at the Lower West Terrace:

> I was actually looking for my mother when I ran up, ran uh, was walking around the building and heard the screams of people yelling "we can't breathe," "we need help," "we need water," "please help me get these people outta here" and I immediately jumped into the center of that pile, to the front, and made my way to the front of that pile, you know and started trying to help people. And it's in my helping other people that they're saying I got my assault [charge].

*Id.* at 19:30-20:00.

6

Although the defendant requests that the Court release him under 18 U.S.C. § 3143(a)(1), the defendant has not provided any evidence, much less clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of the community. Indeed, in light of the defendant's prior conduct on parole and supervised release—which include his actions on January 6—the defendant has not demonstrated that he is not a danger to the community. As to his risk of flight, the defendant has had serious medical conditions even before he was arrested, and they did not prevent the defendant from driving from Mississippi to California, to Mexico and then to Arizona. Moreover, it is questionable whether the defendant's mother would at all mitigate the defendant's risk of flight, considering that she believes him to be innocent. *See, i.e., United States v. Chansley*, 2021 WL 4133655, at *4 (D.D.C. Sept. 10, 2021) (defendant fails to meet his burden under 3143(a)(1) where he has access to "non-traditional sources" of money, has "demonstrated an ability to travel long distances using untraceable methods," and where his custodian (mother) "has repeatedly stated that he has done nothing wrong.").

Should the defendant be released, it is unclear when the defendant would receive treatment and if the VA Hospital would be able to fully treat the defendant prior to his sentencing on October 14, 2022.

For the above reasons, the government would request the defendant's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:     /s/ Lucy Sun
Lucy Sun
Assistant United States Attorney
Massachusetts Bar Number 691766
United States Attorney's Office
Detailee – Federal Major Crimes
555 Fourth Street, N.W.
Washington, D.C. 20530
(617) 590-9468
lucy.sun@usdoj.gov

8